**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TRANSGENDER LAW CENTER and RAPID DEFENSE NETWORK**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES IMMIGRATION & CUSTOMS ENFORCEMENT**<br><br>**Defendant.** | **Case No. 21-cv-2153 (RCL)**<br>**Case No. 21-cv-2155 (RCL)**<br>**(Consolidated)** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT REGARDING VIDEO FILE**

This motion concerns the final record released in response to the Freedom of Information Act requests of Plaintiffs Transgender Law Center ("TLC") and Rapid Defense Network ("RDN") at issue in this case: a video lasting slightly less than half an hour of a presentation made to employees of Defendant United States Immigration and Customs Enforcement ("ICE"). The 2016 video consists of narration of a slideshow providing information to ICE health care workers regarding treatment of their transgender patients. ICE "bleeped" out the presenter's name – the only redaction in the video as produced to Plaintiffs.

ICE has not moved for summary judgment regarding this video, as this Court had directed. This Court should enter summary judgement for Plaintiffs and order ICE to release an unredacted copy of the video because ICE cannot meet its burden to show that it properly withheld the narrator's name under FOIA privacy Exemptions 6 and 7(C), and even if it could meet that burden, it could not make the requisite showing that releasing the name would foreseeably cause harm to that person's privacy interests.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

TLC and RDN set forth the relevant factual and procedural background of this case in their Memorandum in Support of Plaintiffs' Cross-Motion for Summary Judgment (Dkt. 41-1). Accordingly, this Memorandum refers to only those portions of that background that are most relevant to this Motion.

On April 19, 2021, TLC and RDN filed the six FOIA requests at issue in this litigation. The relevant request sought records including

> Any training manuals, guides, memoranda, and other documents used to train ICE employees, DHS employees, or third-party contractors in the administration, regulation, or provision of medical and mental health care of transgender or intersex people in detention in existence on or after January 1, 2015.

Compl. ¶ 11 & Ex. 1, No. 21-cv-02153. Another request sought communications and correspondence containing the terms "transgender" and/or "intersex" with Lana Khoury of DHS/ICE/ERO/Custody Programs, Andrew R. Lorenzen-Strait of DHS/ICE/ERO/Custody Programs, and Capt. Edith Lederman, M.D., M.P.H. of the ICE Health Service Corps. *See* Compl. ¶ 22 & Ex. 7, No. 21-cv-02153.

On August 12, 2021, months after ICE failed to respond within the statutory deadline, Plaintiffs filed two FOIA actions against ICE that this Court consolidated in its unopposed order of August 23, 2021 (Dkt. 10). ICE completed its searches for responsive records in early 2022 and made its first production on March 11, 2022. *See* 4/8/22 Joint Status Rept. (Dkt. 19). ICE finished its disclosures of documents in July 2024. *See* 7/8/24 Joint Status Rept. (Dkt. 35). At the time of the July 8, 2024 status report, the only responsive record yet to be produced was a video approximately 26 minutes, 38 seconds long. *Id.* at 1.

This Court's Order of July 23, 2024 (Dkt. 38) required ICE to produce the video on or before August 12, 2024. ICE provided a redacted copy of the video to TLC and RDN on July

24, 2024. *See* Def.'s Notice of Compliance (Dkt. 39). The video consists of a slideshow and narration of a presentation titled, "Providing treatment to adult transgender patients in ICE custody: *update on IHSC clinical guidelines*," dated 2016. Second Decl. of Matthew E. Kelley ("Second Kelley Decl.") ¶ 6. The narration begins, "Hello, my name is," with the name "bleeped." *Id.* ¶ 7. That is the only redaction in the video. *Id.* In the cover letter accompanying the video, ICE Supervisory Paralegal Specialist Rolando Velasco stated that ICE redacted information from the video pursuant to Exemptions 6 and 7(C). *Id.* ¶ 4 & Ex. A at 3.

The July 23 Order required ICE to file its motion for summary judgment regarding the video on or before August 19, 2024. Dkt. 38 at 1. ICE has not done so. TLC and RDN now move for summary judgment on the grounds that ICE has not and cannot justify withholding the name of the person narrating the presentation on the video.

## ARGUMENT

### I. STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The agency seeking to withhold a record under FOIA "bears the burden of proving that an exemption applies." *Bartko v. DOJ*, 898 F. 3d 51, 62 (D.C. Cir. 2018). The 2016 amendments to FOIA imposed the additional burden on the government of "showing that it 'reasonably foresees that disclosure would harm an interest protected by an exemption' or that 'disclosure is prohibited by law.'" *Leopold v. DOJ*, 94 F.4th 33, 37 (D.C. Cir. 2024).

Here, ICE has not attempted to meet any of its burdens. Summary judgment in Plaintiffs' favor is proper because ICE cannot meet its burden to show that the exemptions it asserted in the cover letter for the production – personal privacy Exemptions 6 and 7(C) – permit withholding

the narrator's name. Further, even if a privacy exemption did apply, withholding the name would still be improper because ICE cannot show any foreseeable harm would occur if the narrator's name were released.

## II. ICE CANNOT JUSTIFY WITHHOLDING THE NAME UNDER PRIVACY EXEMPTIONS 6 AND 7(C)

Exemptions 6 and 7(C) both allow withholding of information that would create an unwarranted invasion of personal privacy. *See* 5 U.S.C. §§ 552(b)(6) & (b)(7)(C). The difference between them is that Exemption 6 allows withholding information that would constitute "a clearly unwarranted invasion of personal privacy," while Exemption 7(C) allows withholding of records compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). Exemption 7(C) thus sets "a lower bar for withholding material" that, where it applies, also encompasses information covered by Exemption 6. *Id.*

In evaluating withholdings under the privacy exemptions, agencies and reviewing courts must "'balance the privacy interests that would be compromised by disclosure against the public interest in the release of the requested information.'" *100Reporters LLC v. DOJ*, 248 F. Supp. 3d 115, 158 (D.D.C. 2017) (quoting *Beck v. DOJ*, 997 F.2d 1489, 1491 (D.C. Cir. 1993)). Broadly, the relevant public interest is how the information at issue would advance "the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny,'" thus furthering "the citizens' right to be informed about 'what their government is up to.'" *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (citations omitted). The D.C. Circuit has stressed that "[a]t all times, courts must bear in mind that FOIA mandates a strong presumption in favor of disclosure, and that the statutory exemptions, which are exclusive, are to be narrowly construed." *ACLU*, 655 F.3d at 5 (cleaned up).

### A. Exemption 7(C) Does Not Apply To the Video Because the Video Was Not Compiled for Law Enforcement Purposes

The threshold requirement that an agency must meet to properly withhold information under Exemption 7(C) is that the record in question was compiled for law enforcement purposes. 5 U.S.C. § 552(b)(7). The fact that ICE is a law enforcement agency is not dispositive, because it is well settled that "not every document compiled by a law enforcement agency is compiled for a law enforcement purpose." *100Reporters*, 248 F. Supp. 3d at 159. The agency must show that the records were either compiled as part of an investigation into criminal or civil wrongdoing or that they "relat[e] to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation." *Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002).

The video meets none of those criteria. It is a training presentation to ICE medical staff regarding how to meet transgender detainees' medical needs. It was not created as part of any investigation of any kind of misconduct, nor does it disclose any guidelines, techniques, sources or procedures for law enforcement investigations or prosecutions. As such, the video was not compiled for law enforcement purposes and Exemption 7(C) does not apply.

### B. Exemption 6 Does Not Apply to the Video Because the Public Interest Outweighs the Narrator's Minimal Privacy Interest

The balance of privacy versus public interest regarding the name of the video's narrator tips decidedly in favor of release. Release of the name will illuminate what ICE is "up to" regarding medical treatment of transgender adults in its custody. The person's position within ICE, their medical training and status as a licensed health care provider, and their expertise in transgender health issues, if any, are all necessary to understanding ICE's priorities in training its medical staff to provide care to transgender people. If the presenter is a high-ranking ICE official who holds a physician's or nurse's license, that would indicate that ICE was placing a

higher priority on transgender health issues than if the presenter were someone without medical training and experience. For example, if the presenter is Capt. Lederman, a physician and high-ranking officer who leads ICE's infectious disease program, that would bring important context both to ICE's overall treatment of transgender detainees as well as to Capt. Lederman's other work within ICE regarding transgender detainees.[1] This information, in turn, will allow the public to better evaluate ICE's overall treatment, particularly its medical treatment, of transgender people in its custody.

This strong public interest outweighs any minimal privacy interest the video's narrator may have. The fact that an individual ICE employee narrated a presentation to other ICE employees to convey information regarding the important issue of caring for transgender people is not the kind of private or personal information Exemption 6 is meant to shield. The exemption "'does not authorize a 'blanket exception' for the names of all government employees in all records.'" *New Orleans Workers' Ctr. for Racial Justice v. ICE*, 373 F. Supp. 3d 16, 59 (D.D.C. 2019) (citation omitted). Thus, to justify Exemption 6 withholdings, an agency "must show that the threat to employees' privacy is real rather than speculative." *Id.* (citation omitted).

Here, ICE cannot show a real threat to the narrator's privacy. The video does not show the face of or contain any other personal information about the narrator. The video does not associate the narrator with any type of wrongdoing or any law enforcement investigation. It merely depicts this person doing their job in providing information to other government employees. This is not the kind of situation where embarrassment or the threat of harassment is reasonably likely. *See Kleinert v. BLM*, 132 F. Supp. 3d 79, 97 (D.D.C. 2015) (refusing to

[1] Indeed, if the narrator is any one of the three individuals named in Plaintiffs' requests, withholding the name would be unwarranted because those individuals' identities and general roles in ICE's transgender policy are well known.

"accept the suggestion that the remote possibility of harassment means that every disclosure of a name implicates a significant privacy interest"). Further, a person's employment by a law enforcement agency does not automatically cloak them with a substantial privacy interest in keeping their identity secret. *See Lawyers' Comm. for Civil Rights Under Law v. DOJ*, No. 18-cv-167 (EGS/GMH), 2020 U.S. Dist. LEXIS 246100, at *100-01 (D.D.C. Oct. 16, 2020) (collecting cases). "Rather, the agency must establish, at the very least, that the employees whose names have been withheld not only are employed in a sensitive agency, but also that they have sensitive occupations." *Id.* (cleaned up).

Exemption 7(C) does not apply to the video because it was not compiled for a law enforcement purpose, and Exemption 6 does not apply because the strong public interest in knowing the person's name outbalances any minimal personal privacy interest. This Court should therefore grant this Motion and order ICE to release the video in unredacted form.

## III. ICE CANNOT SHOW FORESEEABLE HARM

Even if it could meet its burden to show that one or both of the privacy exemptions allow it to withhold the narrator's name, ICE still must release an unredacted version of the video because it cannot show any foreseeable harm. FOIA requires that an agency may withhold information pursuant to a discretionary exemption such as Exemptions 6 and 7(C) only if "(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption . . . or (II) disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). This foreseeable harm requirement "imposes an independent and meaningful burden on agencies" to "concretely explain how disclosure 'would' – not 'could' – adversely impair" an interest the exemption protects. *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369-70 (D.C. Cir. 2021) (internal marks omitted).

To meet its burden, an agency therefore must "provide 'a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede' the interests protected by a FOIA exemption." *Leopold*, 94 F.4th at 37 (citation omitted). For example, "to justify the redactions of the names of employees because of feared harassment, there must be some competent evidence that disclosure of that information could lead to harassment." *Lawyers' Comm.*, 2020 U.S. Dist. LEXIS 246100, at *102.

Here, for the reasons stated in the previous section, ICE will be unable to make the required showing of foreseeable harm. This flaw provides an independent reason why this Court should grant Plaintiff's Motion and order ICE to release the narrator's name.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs Transgender Law Center and Rapid Defense Network respectfully request that this Court enter an order granting this Motion for Summary Judgment Regarding Video File and directing ICE to release an unredacted copy of the video to the Plaintiffs.

Dated: August 26, 2024

Respectfully submitted,

BALLARD SPAHR LLP

By: s/ *Matthew E. Kelley*
Matthew E. Kelley, Bar # 1018126
1909 K Street, NW, 12 Floor
Washington, D.C. 20006
Phone: 202-508-1112
Email: kelleym@ballardspahr.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I caused the foregoing to be filed and served electronically via the Court's ECF system upon counsel of record.

Dated: August 26, 2024

*/s/Matthew E. Kelley*
Matthew E. Kelley