**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TRANSGENDER LAW CENTER and RAPID DEFENSE NETWORK**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES IMMIGRATION & CUSTOMS ENFORCEMENT**<br><br>**Defendant.** | **Case No. 21-cv-2153 (RCL)**<br>**Case No. 21-cv-2155 (RCL)**<br>**(Consolidated)** |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

In its Opposition to Plaintiffs' Cross-Motion for Summary Judgment ("Def.'s Opp.") (Dkt. 43), Defendant United States Immigration and Customs Enforcement ("ICE") fails to meaningfully address the showings made by Plaintiffs Transgender Law Center ("TLC") and Rapid Defense Network ("RDN") that doom its defenses. In their memorandum in support of their Cross-Motion for Summary Judgment ("Cross-MSJ") (Dkt. 41-1), Plaintiffs demonstrated that ICE had failed to meet its burdens in multiple ways: ICE failed to perform an adequate search; failed to describe its redactions with the requisite specificity; failed to show foreseeable harm; failed to release all reasonably segregable information; failed to show that Exemption 7 applies; and failed to properly justify its withholdings under Exemptions 5, 6, 7(C) and 7(E). ICE's Opposition does not address these deficiencies and instead mischaracterizes the law and Plaintiffs' arguments, falling back on the same assertions that TLC and RDN showed were unavailing. Because ICE's Opposition has not remedied the fatal flaws Plaintiffs identified, this Court should deny the agency's motion for summary judgment, grant Plaintiffs' Cross-MSJ, and order ICE to release all improperly withheld materials, perform an adequate search, and produce

the responsive records that search finds.

## ARGUMENT

### I. ICE FAILED TO MEET ITS BURDEN TO DEMONSTRATE BEYOND MATERIAL DOUBT THAT ITS SEARCHES WERE REASONABLE

TLC and RDN explained in their Cross-MSJ that ICE has the burden on summary judgment to "demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Cross-MSJ at 10 (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)). Plaintiffs showed that ICE had not done do, pointing specifically to the fact that ICE's searches used broad and inconsistent sets of search terms, many of which were facially inadequate. *Id.* at 11-12.

ICE defends its search terms as reasonable, asserts that "it is for ICE to determine how best to construct a search for responsive records," and notes that generally a requester cannot dictate the precise search terms that an agency uses. Def.'s Opp. at 2-3. True, an agency has leeway to determine where and how to search for responsive records – but it cannot use that discretion to perform searches that are unreasonably narrow. *Gov't Accountability Project v. DHS*, 335 F. Supp. 3d 7, 12 (D.D.C. 2018). As Judge Cooper put it:

> FOIA requests are not a game of Battleship. The requester should not have to score a direct hit on the records sought based on the precise phrasing of his request. Rather, the agency must liberally interpret the request and frame its search accordingly.

*Id.*; *see also Am. Oversight v. DHS*, 691 F. Supp. 3d 109, 115 (D.D.C. 2023) (ICE search was inadequate because it did not use variations or shortened versions of names); *Bagwell v. DOJ*, 311 F. Supp. 3d 223, 230 (D.D.C. 2018) (agency's failure to use likely abbreviations or acronyms as search terms rendered search inadequate).

In *Bagwell*, for example, the requester sought records related to the child sex abuse scandal at Penn State. *Id.* at 229. However, because the requester referred to the school by its

full name, the agency searched only for the term "Pennsylvania State University" and did not use common synonyms such as "Penn State" or "PSU," which rendered the search facially inadequate. *Id.* at 229-230. So too, here. ICE's searches that failed to use the term "intersex" at all and failed to use the word "transgender" as a standalone term, for example, were not reasonably calculated to locate responsive records to Plaintiffs' requests for documents regarding transgender and intersex detainees. The fact that ICE used broader sets of search terms in other searches is a positive indication that its use of more limited search terms was unreasonable and that using the larger list of terms would not have been unduly burdensome. *See* Cross-MSJ at 11-12.

After incorrectly accusing Plaintiffs of trying to dictate the search terms it used, ICE flip-flops and criticizes TLC and RDN for *not* doing so. Def.'s Opp. at 4. ICE asserts that because the original requests did not suggest specific search terms, "Plaintiffs cannot now, more than three years later, complain of other search terms that it thinks ICE should have employed." *Id.* Just as FOIA requests are not a game of Battleship, neither are they a game of "gotcha." ICE's impossibly contradictory demands of Plaintiffs serve only to highlight that ICE has failed to meet its burden under the law to conduct reasonable searches for responsive records.[1]

This Court should deny ICE's motion for summary judgment regarding the search, grant TLC's and RDN's Cross-MSJ, order ICE to start it search over using terms that are reasonably

---

[1] TLC and RDN also noted in their Cross-MSJ that while ICE specifically stated it had searched the emails of one of the named officials whose relevant communications Plaintiffs requested, it did not state that it searched the email records of the other two officials named in the requests. Cross-MSJ at 11. In its Opposition and supplemental declaration, ICE asserts that it did search the emails of the other two officials, but did not name them "to protect the[ir] privacy interests." Supp'l Decl. of Fernando Pineiro Jr. ("Supp'l Pineiro Decl.") ¶ 6 (Dkt. 43-1). ICE does not explain how omitting from its declaration the names of two government officials Plaintiffs specifically named in their requests could possibly protect their privacy.

calculated to locate all responsive records, and produce the additional records those searches locate.

## II. ICE'S DECLARATIONS STILL FAIL TO DESCRIBE ITS REDACTIONS AND WITHHOLDINGS WITH THE REQUISITE SPECIFICITY

ICE spends several paragraphs of its Opposition trying to knock down a straw man, insisting that it is not required to provide a *Vaughn* index in the usual spreadsheet format. Def.'s Opp. at 5-6. But TLC and RDN do not dispute that it is the content of the *Vaughn* index, not its form, that matters. *See* Cross-MSJ at 12-14.

ICE could have met its burden to justify its redactions and withholdings by providing declarations sufficiently detailed to give Plaintiffs and this Court "a reasonable basis to evaluate the claim" that a particular exemption applies. Def.'s Opp. at 5 (quoting *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994)). ICE did not do that. Instead, ICE submitted declarations that fall far short of the well-defined requirement that they set forth "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." Cross-MSJ at 12-13 (quoting *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 250-51 (D.C. Cir. 1977); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973). As the D.C. Circuit has explained,

> Specificity is the defining requirement of the *Vaughn* index and affidavit; affidavits cannot support summary judgment if they are 'conclusory, merely reciting statutory standards, or if they are too vague or sweeping.'

*King v. DOJ*, 830 F.2d 210, 219 (D.C. Cir. 1987) (citation omitted).

TLC and RDN demonstrated in their Cross-MSJ that ICE's descriptions of the withheld documents and information are too vague and sweeping to meet the agency's burden. Cross-MSJ at 13-14. Plaintiffs noted that, regarding the privacy exemptions, ICE failed to "tie *any*

purported basis for withholding to *any* specific page or document." *Id.* at 13. TLC and RDN also pointed out that, although ICE did provide Bates numbers for some of its withholdings pursuant to Exemptions 5 and 7(E), it applied broad and vague descriptions to dozens of disparate pages. *Id.* at 13-14. ICE does not address the specific flaws Plaintiffs identified, other than to repeat its nebulous and imprecise descriptions of its withholdings. *E.g.*, Def.'s Opp. at 6 (stating ICE withheld under Exemptions 6 and 7(C) names, "contact information, including domain names and email addresses, office numbers, initials, and other personally identifiable information of third-party individuals and ICE employees"). Regardless of the form of the agency's descriptions, "the vital result must be an adequate representation of context which, when combined with descriptions of deletions, enables de novo review of the propriety of withholding." *King*, 830 F.2d at 221. ICE does not come close to meeting this standard.

The facts of the cases ICE cites in support of its attempts to shirk its obligations under *Vaughn* and its progeny further demonstrate that the agency has failed to meet its burden in this regard. For example, in *Keys v. DOJ*, cited in Def.'s Opp. at 7, the D.C. Circuit approved a declaration that attached every redacted document provided to the plaintiff, with annotations corresponding to each redaction which explained what was redacted, which exemption was claimed, and the type of information allegedly subject to the exemption. 830 F.2d 337, 349-50 (D.C. Cir. 1987) (noting that "[e]ach deletion was correlated specifically and unambiguously to the corresponding exemption."); *see also Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006) (index that "tied each individual document to one or more exemptions" accompanied by declaration that "linked the substance of each exemption to the documents' common elements" was adequate); *Ballow v. DOJ*, No. 20-cv-0245 (ABJ), 2021 U.S. Dist. LEXIS 271768, at *1-3 (D.D.C. June 25, 2021) (where only records at issue were a two-page letter

regarding the plaintiff's extradition from Mexico and an 82-page, Spanish-language summary of conditions imposed by the Mexican government, agency's declaration that "described the responsive records and explained the agency's rationale for withholding the letter and attachment in full" was sufficient).

Because ICE has failed to meet its burden to justify its redactions and withholdings, this Court should deny summary judgment to ICE on all of them, grant summary judgment for TLC and RDN, and order ICE to release the withheld records.[2]

## III. ICE'S VAGUE AND CONCLUSORY DECLARATIONS DO NOT MEET ITS BURDEN TO SHOW FORESEEABLE HARM

The D.C. Circuit has emphasized that the requirement Congress added to FOIA in 2016 that agencies show how release of otherwise exempt information would cause foreseeable harm "imposes an independent and meaningful burden on agencies" to "concretely explain how disclosure 'would' – not 'could' – adversely impair" an interest the exemption protects. *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369-70 (D.C. Cir. 2021) (internal marks omitted). TLC and RDN showed in their Cross-MSJ that ICE had not met its burden to provide the concrete explanation the law requires. Cross-MSJ at 14-18. In response, ICE simply repeats its inadequate and unspecific arguments. *See* Def.'s Opp. at 9, 13-14, 17-18, 20.

Regarding the deliberative process privilege, for example, the D.C. Circuit has instructed that a "perfunctory statement that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information between senior

[2] ICE falsely states that TLC and RDN "concede" that if this Court finds its declarations insufficiently detailed, it should order the agency to provide a *Vaughn* index describing only a "representative sampling" of redacted and withheld documents. Def.'s Opp. at 7 n.3. Plaintiffs have made no such concession. Rather, TLC and RDN respectfully suggest that if this Court does not order ICE to release all of the records and information it inadequately described in its two declarations, the agency should be ordered to submit a *Vaughn* index or supplemental declaration that is sufficiently detailed and specific to meet the law's requirements.

leaders within and outside of the agency will not suffice." *Reporters Committee*, 3 F.4th at 370 (cleaned up). That is all ICE provides here, however. The agency asserts that releasing these materials

> would destroy the integrity of the deliberative or decision-making process within the agency, discourage the expression of candid opinions, inhibit the free and frank exchange of information among agency personnel, have a chilling effect on agency personnel, and mislead the public as the comments and text of draft documents often differ, sometimes significantly, from final agency positions.

Def.'s Opp. at 14. As in ICE's original motion, this language is merely "mouthing the generic rationale for the deliberative process privilege itself." Cross-MSJ at 16 (quoting *Reporters Committee*, 3 F.4th at 370).

ICE asserts that the D.C. Circuit approved similar language in *Machado Amadis v. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020). Def.'s Opp. at 13. The explanation of foreseeable harm in that case, however, is far more detailed and specific than the boilerplate ICE offers here, as shown in ICE's own summary of the case. *Id.* (explaining that the agency's declaration "stated that the withheld materials revealed 'line attorneys' evaluations, recommendations, discussions and analysis which are prepared for senior-level review and decision-making'" and that disclosure "'would discourage line attorneys from candidly discussing their ideas, strategies, and recommendations, thus impairing the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals'") (quoting *Machado Amadis*, 971 F.3d at 370-71). As the excerpt above shows, ICE's declarations contain nowhere near that level of specificity.

Similarly, ICE attempts to explain the foreseeable harm in disclosing materials purportedly subject to the attorney-client privilege by regurgitating the basis of the privilege, saying that release would "result in a chilling effect on interactions and communications between agency employees and their legal counsel" and "deter 'full and frank communications' among government counsel and their clients, and would undermine the effective rendering of legal services." Def.'s Opp. at

9. ICE's descriptions of the foreseeable harm in releasing information withheld under the privacy exemptions and Exemption 7(E) also are inadequate boilerplate. *See id.* at 17-18, 20. As Plaintiffs established, these "boilerplate and generic assertions" and "wholly generalized and conclusory" statements are insufficient to carry ICE's burden as a matter of law. Cross-MSJ at 15 (quoting *Leopold v. DOJ*, 94 F.4th 33, 37 (D.C. Cir. 2024)).

ICE's failure to meet its burden to show foreseeable harm for any of its withholdings provides an independent basis for this Court to deny the agency's motion for summary judgment, grant Plaintiff's motion, and order ICE to release the improperly withheld materials.

## IV. ICE'S CONCLUSORY DECLARATIONS FAIL TO MEET ITS BURDEN TO SHOW IT RELEASED ALL REASONABLY SEGREGABLE INFORMATION

ICE has the duty under FOIA to segregate and release all non-exempt information rather than withholding documents in full simply because some of the information within them qualifies for an exemption. 5 U.S.C. § 552(b). Plaintiffs' Cross-MSJ described how ICE failed to meet its burden to "show with reasonable specificity why the document cannot be further segregated, or why the document is not reasonably segregable – for example, because the nonexempt material would be an essentially meaningless set of words and phrases." Cross-MSJ at 19 (quoting *EPIC v. DHS*, 926 F. Supp. 2d 311, 315 (D.D.C. 2013) (cleaned up)).

In its Opposition, ICE merely repeats its conclusory statement that it was not withholding any reasonably segregable information and contends that it is entitled to a presumption that it complied with the law simply because it said so. Def.'s Opp. at 23. As TLC and RDN showed, however, that is not the standard – an agency is entitled to such a presumption only where, unlike here, its declaration is "relatively detailed and non-conclusory." Cross-MSJ at 19 (quoting *Watkins Law & Advocacy, PLLC v. United States*, 78 F.4th 436, 450 (D.C. Cir. 2023)).

ICE's failure to meet its burden to show that it released all reasonably segregable

information provides yet another reason why this Court should deny the agency's motion for summary judgment and grant Plaintiffs' Cross-MSJ.

## V. ICE CANNOT RELY ON ITS CLAIM THAT ALL OF ITS RECORDS ARE SUBJECT TO EXEMPTION 7

ICE repeats in its Opposition the fallacy that because it is a law enforcement agency, all of its records were compiled for law enforcement purposes, and thus are subject to Exemption 7. Def.'s Opp. at 19-20. Not so. As Plaintiffs demonstrated in their Cross-MSJ, it is indisputable that "not every document compiled by a law enforcement agency is compiled for a law enforcement purpose." Cross-MSJ at 20 (quoting *100Reporters LLC v. DOJ*, 248 F. Supp. 3d 115, 159 (D.D.C. 2017)).

Although law enforcement agencies such as ICE is entitled to deference when they describe records as being compiled for law enforcement purposes, they are not excused from the requirement to show "how and under what circumstances the requested files were compiled" as well as "whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." Cross-MSJ at 20 (quoting *Bartko v. DOJ*, 898 F.3d 51, 64 (D.C. Cir. 2018)). ICE did not even try to make that showing here, despite having been scolded by numerous other courts for the same omission. *Id.* at 20-21 (collecting cases). Having refused to meet its burden to show that Exemption 7 applies, ICE cannot invoke its protection for any of the records and information it is withholding from TLC and RDN.

## VI. ICE HAS NOT MET ITS BURDEN TO JUSTIFY ITS PRIVACY WITHHOLDINGS

Although ICE's explanations of its privacy withholdings are insufficient to meet its burden to show that Exemption 6 applies (or that the withheld records are subject to Exemption 7(C)), TLC and RDN also showed in their Cross-MSJ that the types of withheld information ICE describes are not categorically exempt under FOIA and the agency did not perform the proper

balancing test. Cross-MSJ at 21-25. ICE's opposition does not refute these showings.

ICE argues that the law allows it to withhold the names and personal identifying information of *all* third parties and government employees. Def.'s Opp. at 16. That is not the law. To the contrary, in one of the cases ICE cites the D.C. Circuit expressly held that FOIA "does *not* categorically exempt individuals' identities, though, because the 'privacy interest at stake may vary depending on the context in which it is asserted.'" *Judicial Watch, Inc. v. FDA*, 449 F.3d at 153 (citation omitted) (emphasis added); *see also Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 675 (D.C. Cir. 2016) ("the range of circumstances included in a category must characteristically support an inference that the statutory requirements for exemption are satisfied"). "The question, then, is whether there has been a sufficient showing that the balancing analysis under Exemption 6 would yield a uniform answer across the entire proffered category, regardless of any variation among the individual records or persons falling within it." *Id.* ICE has not attempted to make that showing, instead lumping together all third parties and all government workers (except an undefined category of "senior and public-facing" federal employees) without differentiating them by role, rank, or context.

Plaintiffs also pointed out that ICE is improperly withholding email domain names, which the Ninth Circuit ordered ICE to release to TLC in a separate FOIA case on the grounds that the domains do not identify any particular individual. Cross-MSJ at 22-23 (citing *Transgender Law Center v. ICE*, 46 F.4th 771, 784 (9th Cir. 2022)). In response, ICE dismisses that precedent as "outside this district" and then conflates domain names with entire email addresses, which often do identify individuals. Def.'s Opp. at 17. ICE cannot continue to withhold domain names because they simply do not identify individuals and thus cannot qualify

for protection under Exemption 6 or 7(C).

Further, determining whether information is properly withheld under FOIA's privacy exemptions requires agencies and reviewing courts to balance the asserted privacy interests against the public interest in the information. *See* Cross-MSJ at 21-22. ICE falsely asserts that TLC and RDN failed to identify a significant public interest in the withheld information. Def.'s Opp. at 18-19. To the contrary, Plaintiffs have demonstrated the strong public interest in several categories of information for which ICE is claiming a privacy exemption, including the need to evaluate whether ICE is properly withholding records under the deliberative process and attorney-client privileges and the fact that privacy exemptions cannot be used to conceal shoddy work by government contractors. Cross-MSJ at 23-24.

ICE also ignores Plaintiffs' showing that some of the information withheld under the privacy exemptions is not private by any stretch of the imagination. For example, ICE is withholding the names of professors who gave a presentation to ICE personnel regarding transgender detainees despite the fact that their names are publicly available in connection with that very presentation. Cross-MSJ at 24-25 (also noting that ICE redacted the authors' names of a report publicly available online).

Because ICE has failed to justify its redactions and withholdings under Exemptions 6 and 7(C), this Court should deny the agency's motion for summary judgment and grant Plaintiff's Cross-MSJ on this issue.

## VII. ICE'S JUSTIFICATIONS FOR WITHHOLDING MATERIALS UNDER EXEMPTION 5 REMAIN INSUFFICIENT

ICE's opposition fails to rebut Plaintiffs' showing that it failed to meet its burden to show that it properly withheld records and information under Exemption 5 pursuant to the deliberative process and attorney-client privileges. *See* Cross-MSJ at 25-29.

### A. ICE's Support for Its Withholdings Under the Deliberative Process Privilege Is Insufficient As A Matter of Law

ICE attempts to counter Plaintiffs' showing that it failed to meet its burden to demonstrate the applicability of the deliberative process privilege by repeating its vague and conclusory descriptions of the withheld material. Def.'s Opp. at 10-13. ICE still cannot meet its burden to show that the withheld materials are predecisional and deliberative and thus subject to the privilege, however. *See* Cross-MSJ at 25-27.

TLC and RDN demonstrated in their Cross-MSJ that ICE failed to meet its burden by failing to identify, at least by rank or job title, those who wrote and received the documents, thus preventing any analysis of "the nature of the decisionmaking authority vested in the document's author and recipient." *Id.* at 26 (quoting *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 55, 69 (D.D.C. 2013)). Assessing the document's role in the deliberative process is impossible without information about the "relative positions in the agency's chain of command occupied by the document's author and recipient." *Judicial Watch, Inc. v. DOJ*, 20 F.4th 49, 56 (D.C. Cir. 2021) (rejecting as inadequate agency's explanation of deliberative process withholdings that "never even identifies who prepared the [documents] or to whom the [documents] were addressed").

ICE asserts that it sufficiently identified the authors and recipients by stating the documents were circulated "amongst the Enforcement and Removal Operation and ICE Health Services Corps employees . . . for the purpose of making recommendations to senior Enforcement and Removal Operation and ICE Health Service Corps employees and officers for their final decision." Def.'s Opp. at 10-11. That vague description, untethered to any specific documents, leaves too many questions unanswered to properly meet ICE's burden.

ICE insists that any document labeled a draft is *per se* predecisional and deliberative, falsely stating that TLC and RDN "without any support, argue that it is insufficient to simply

designate a document as a draft[.]" Def.'s Opp. at 11. Plaintiffs cited two cases in support. Cross-MSJ at 37. Moreover, the D.C. Circuit has repeatedly rejected precisely the proposition that ICE relies on here: that any document labeled as a "draft" automatically qualifies for the deliberative process privilege. *See, e.g., Judicial Watch v. DOJ*, 20 F.4th at 55-56 ("Were there any doubt that drafts are not automatically exempt under the deliberative process privilege, we dispelled it last term in *Reporters Committee for Freedom of the Press v. FBI*, where the government 'failed to identify any deliberative component' to draft PowerPoint slides.") (citation omitted). The D.C. Circuit explained that

> in those cases where we found that the withheld material was deliberative, we knew the 'who,' *i.e.*, the roles of the document drafters and recipients and their places in the chain of command; the 'what,' *i.e.*, the nature of the withheld content; the 'where,' *i.e.*, the stage within the broader deliberative process in which the withheld material operates; and the 'how,' *i.e.*, the way in which the withheld material facilitated agency deliberation.

*Id.* at 56. ICE has provided none of that information in this case.

Plaintiffs also demonstrated that ICE failed to meet its burden to show that it released purely factual material from drafts that is not subject to the deliberative process privilege. Cross-MSJ at 27. ICE responds that it can withhold factual material under the deliberative process privilege "when 'the selection or organization of facts is part of an agency's deliberative process[.]'" Def.'s Opp. at 12 (quoting *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 513-14 (D.C. Cir. 2011)). That misses the point: If ICE is withholding factual information under the deliberative process privilege because that information is intertwined with the deliberative process, it should say so. It has not.

**B. ICE's Has Not Met Its Burden To Show the Attorney-Client Privilege Applies**

Plaintiffs demonstrated in their Cross-MSJ that ICE had not properly supported its withholdings pursuant to the attorney-client privilege for two reasons. First, ICE's declarations

did not contain a detailed explanation of the steps the agency took to keep those purported attorney-client communications confidential. Cross-MSJ at 28-29. Second, four of the eight pages ICE identified as having attorney-client privilege redactions did not, in fact, have any such redactions. *Id.* at 29. ICE's Opposition does not remedy those shortcomings.

As TLC and RDN explained, ICE bears the burden of proving that the information withheld pursuant to the attorney-client privilege actually falls within the privilege, including that the attorney-client communications were confidential and have been kept confidential. *See id.* at 28. In other words, to invoke the privilege ICE "must demonstrate a communication's confidentiality both at the time of the communication and that such confidentiality has been *maintained since*." *Nat'l Press Club Journalism Inst. v. ICE*, No. 18-2932 (RC), 2023 U.S. Dist. LEXIS 229953, at *39 (D.D.C. Dec. 28, 2023) (cleaned up) (emphasis in original).

ICE has not demonstrated that it has done *anything* to maintain the confidentiality of this redacted information, and instead relies on its declarant's conclusory assertion that "the withheld information has been shared only with the client office employees." Def.'s Opp. at 9 (citing Pineiro Decl. ¶ 32). ICE's declarations "say nothing about the steps that the agency took to protect the withheld information from general disclosure." *Nat'l Press Club*, 2023 U.S. Dist. LEXIS 229953, at *37-40 (rejecting nearly identical assertions from ICE's declarant and collecting similar cases). Although there is no requirement that material subject to the attorney-client privilege must be labeled as "restricted" or "confidential," Def.'s Opp. at 8, ICE must offer something more than its declarant's conclusory say-so to meet its burden in this regard.

ICE asserts that "the record is devoid of any evidence that ICE waived the attorney-client privilege." Def.'s Opp. at 9. ICE bears the burden of proving that the privilege applies; it is not Plaintiff's burden to produce evidence that the privilege has been waived. Here, where "ICE's

declaration[s] . . . say nothing about the steps that the agency took to protect the withheld information from general disclosure," it has not provided sufficient evidence to meet its burden. *Nat'l Press Club*, 2023 U.S. Dist. LEXIS 229953, at *39.

TLC and RDN also pointed out in their Cross-MSJ that four of the eight pages ICE claimed had been redacted for attorney-client privilege did not, in fact, include any Exemption 5 redactions. Cross-MSJ at 29. ICE did not fix this issue. ICE provided a supplemental declaration explaining that the four pages actually were those Bates numbered 6646, 6686, 6742 and 6875. Supp'l Pineiro Decl. ¶ 7. But these pages have the same problem: they do not contain any Exemption 5 redactions. *See* Third Decl. of Matthew E. Kelley ("Third Kelley Decl.") Exs. 9-12. ICE's inability to correlate its purported attorney-client privilege withholdings with specific pages in its productions calls all of its descriptions of its redactions into serious question.

Because ICE still has not properly justified any of its Exemption 5 redactions, this Court should deny the agency's motion for summary judgment, grant summary judgment in Plaintiffs' favor, and order ICE to provide all of the withheld documents and information for which it has improperly invoked Exemption 5.

## VIII. ICE HAS NOT MET ITS BURDEN TO SHOW ITS EXEMPTION 7(E) WITHHOLDINGS ARE PROPER

Aside from the fundamental flaw that ICE has not shown that its records were compiled for law enforcement purposes, ICE has not met its burden to justify its Exemption 7(E) withholdings because its descriptions "offer too little detail to allow [Plaintiffs or the] Court to undertake a meaningful assessment of the redacted material," as TLC and RDN showed in their Cross-MSJ. Cross-MSJ at 30-31 (quoting *Strunk v. Dep't of State*, 845 F. Supp. 2d 38, 47 (D.D.C. 2012)). ICE cites the fact that there is a "relatively low bar for the agency to justify withholding," but does not explain how its conclusory declarations and arguments clear that bar

by "demonstrate[ing] logically how the release of the requested information might create a risk of circumvention of the law." Def.'s Opp. at 20-21 (quoting *Roseberry-Andrews v. DHS*, 299 F. Supp. 3d 9, 32 (D.D.C. 2018)).

ICE cites several cases for the proposition that other courts in this District have allowed similar information to be withheld pursuant to Exemption 7(E). *Id.* at 21-22. But that is no substitute for ICE explaining how *this* information it is withholding from *these* records would create a risk of circumvention of the law if it is released. ICE also cannot rely on any presumption of good faith, having failed to provide the "relatively detailed and non-conclusory" declarations required to invoke that presumption. *Id.* at 21 (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

Because ICE has failed to justify its withholdings under Exemption 7(E), this Court should deny its motion for summary judgment and grant Plaintiff's Cross-MSJ as to this exemption.

## CONCLUSION

For all of the foregoing reasons, and for all of the reasons set forth in its Memorandum of Points and Authorities in Support of its Cross-Motion for Summary Judgment, Plaintiffs Transgender Law Center and Rapid Defense Network respectfully request that this Court enter an order denying ICE's Motion for Summary Judgment, granting Plaintiffs' Cross-MSJ for Summary Judgment, ordering ICE to release all improperly withheld documents in full, directing ICE to perform an adequate search for responsive records, and requiring ICE to release any additional responsive records located in that search.

Dated: September 2, 2024

Respectfully submitted,

BALLARD SPAHR LLP

By: s/ *Matthew E. Kelley*
Matthew E. Kelley, Bar # 1018126
1909 K Street, NW, 12 Floor
Washington, D.C. 20006
Phone: 202-508-1112
Email: kelleym@ballardspahr.com

*Counsel for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this date, I caused the foregoing to be filed and served electronically via the Court's ECF system upon counsel of record.

Dated: September 2, 2024

*<u>/s/Matthew E. Kelley</u>*
Matthew E. Kelley