**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TRANSGENDER LAW CENTER and
RAPID DEFENSE NETWORK,

*Plaintiffs,*

v.

UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT,

*Defendant.*

**Case No. 1:21-CV-2153-RCL**

## MEMORANDUM OPINION

In its last memorandum opinion and order, the Court directed United States Immigration and Customs Enforcement ("ICE") to perform certain searches and provide information to justify its withholdings. *Transgender L. Ctr. v. U.S. Immigr. & Customs Enf't*, 775 F. Supp. 3d 131, 145-46, 149, 154, 156, 157, 159, 160 (D.D.C. 2025). The Court addresses each in detail below, but as a general matter ICE has disregarded those directives. ICE's briefing is largely unresponsive and mostly restates the generic, conclusory legal claims that the Court has already rejected. ICE's briefing does not therefore give the confidence that the agency has taken its disclosure obligations seriously.

To be frank, ICE's conduct during this litigation has been unacceptable. Its submissions to the Court suggest that it either has not read the Court's previous opinions or that it has deliberately chosen to ignore them. Though the Court is once again ordering ICE to comply with its obligations, it will also order the agency to produce certain material for *in camera* review.

For the reasons stated herein, ICE's motion for summary judgment will be granted in part and denied in part, and Plaintiffs' cross-motion for summary judgment will be granted in part and denied in part.

With respect to the adequacy of ICE's search, ICE's motion will be granted in part and denied in part without prejudice; Plaintiffs' motion will be denied without prejudice to allow ICE to conduct the additional searches that the Court previously ordered.

With respect to ICE's withholdings under Exemption 5, ICE's motion will be denied and Plaintiffs' motion will be granted. The Court will order ICE to remove any redactions made pursuant to Exemption 5.

With respect to ICE's withholdings under Exemption 7(C), ICE's motion will be denied. Plaintiffs' motion will be granted. ICE will be ordered to remove redactions made only pursuant to Exemption 7(C).

With respect to ICE's withholdings under Exemption 7(E), ICE's motion will be denied without prejudice, and Plaintiffs' motion will be denied without prejudice. ICE will be ordered to produce supplemental information that specifically addresses the potential harms associated with disclosure of redacted technical information.

With respect to ICE's withholdings under Exemption 6, ICE's motion will be granted in part and denied in part. Plaintiffs' motion will be denied without prejudice. The Court will grant ICE's motion as far as it applies to redactions of employee names under Exemption 6. As for redactions to third-party names, the Court will instruct ICE to produce information sufficient for the Court to assess third-party privacy interests.

## I. BACKGROUND

This memorandum opinion assumes basic familiarity with the factual background of this dispute set out the last time around, *see Transgender L. Ctr.*, 775 F. Supp. 3d 131, and provides only the details required to resolve the present motions.

In 2021, Plaintiffs filed six Freedom of Information Act ("FOIA") requests with ICE seeking information that would "shine a public light on the conditions of detention for immigration detainees who identify as transgender and ICE's operation and oversight of detention facilities that house transgender detainees." Compl. ¶¶ 10. After ICE failed to respond by the statutory deadline, Plaintiffs filed two lawsuits to compel a response. *Transgender L. Ctr.*, 775 F. Supp. 3d at 142.

After producing responsive records, ICE moved for summary judgment in August of 2024. *Id.*; *see also* ECF No. 40. Plaintiffs cross-moved for summary judgment in response. *Transgender L. Ctr.*, 775 F. Supp. 3d at 142; *see also* ECF No. 41. The Court resolved those motions on February 25, 2025. *Transgender L. Ctr.*, 775 F. Supp. 3d 131.

The Court granted in part and denied in part each motion. *Id.* at 141. Specifically, the Court held that ICE had not demonstrated that it had conducted an adequate search for two reasons. First, ICE had not searched the correspondence of certain individuals named in Plaintiffs' complaint. *Id.* at 145. Second, though ICE had demonstrated the reasonableness of certain searches, its failure to use certain search terms (e.g. "intersex") and the terms "transgender" and "intersex" as standalone terms was unreasonable. *Id.* at 149.

The Court then addressed the Exemptions that ICE had asserted to withhold or redact records. First, the Court determined that ICE had not properly asserted the attorney-client privilege under Exemption 5 and held that the privilege was waived for all documents except 2021-ICLI-

00061-2310, 2376, 5901, and 5902. *Id.* at 151–52. Second, the Court held that ICE had not produced sufficient information for the Court to determine whether the deliberative-process privilege under Exemption 5. *Id.* at 154–155. Third, the Court held that ICE had not provided sufficient information to meet the "law enforcement purposes" threshold required to assert Exemption 7. *Id.* at 155–56. Finally, the Court examined ICE's assertion of Exemption 6 for domain names, the names of ICE employees, and the names of third parties. *Id.* at 156. The Court held that the redaction of domain names was improper and directed ICE to produce them. *Id.* Considering the names of ICE employees, the Court determined that ICE had not sufficiently differentiated "between ICE employees with sensitive occupations and those with non-sensitive positions" and therefore denied ICE's motion on this point. *Id.* at 158. For redactions applied to the names of third parties, the Court held that ICE had insufficiently differentiated between "the varying privacy interests among third parties," meaning that Exemption 6 was not properly asserted. *Id.* at 159.

To address deficiencies in ICE's response, the Court issued clear instructions to the agency. The Court required ICE to:

1. File a declaration confirming that the ICE had searched communications of Edith Lederman and Lana Khoury and identify them by name. *Id.* at 145–46.
2. Rerun searches that did not include the term "intersex" and that "only used compound terms, rather than using 'transgender' and 'intersex' as standalone terms." *Id.* at 149.
3. Unredact email domains. *Id.* at 157.
4. File a *Vaughn* index providing the necessary foundation to:
    a. "[W]ithhold each individual document under the deliberative-process privilege . . . ." *Id.* at 154.
    b. "[G]iv[e] the Court a clearer picture of whether the records satisfy the law enforcement purposes threshold . . . ." *Id.* at 156.
    c. Determine whether the invocation of Exemption 6 for non-public facing ICE employees is appropriate. *Id.* at 159.
    d. Determine whether the invocation of Exemption 6 for third parties is appropriate. *Id.*

Parties do not dispute that ICE followed through on items 2 and 3. *See* Pls.' Statement of Genuine Issues of Material Fact ¶ 36; ECF No. 67; ICE Statement of Genuine Issues of Material Fact ¶ 36, ECF No. 65. Additionally, parties have agreed "not to challenge withholdings under FOIA Exemptions 6 and 7(C) . . . as they relate to detainee information. ICE Motion for Summary Judgment at 4 ("ICE Mot."), ECF No. 65.

ICE filed their *Vaughn* index along with their Motion for Summary Judgment on February 18, 2026. ICE Mot. Ex. 2 ("ICE *Vaughn*"). Plaintiffs filed their Cross-Motion for Summary Judgment on March 3, 2026. Plaintiffs' Cross Motion for Summary Judgment ("Pls.' Mot.), ECF No. 67. These motions have been fully briefed and are ripe for review.

## II. LEGAL STANDARD

### A. FOIA

The FOIA provides an avenue for anyone to request and receive the disclosure of government records. 5 U.S.C. § 552. "FOIA mandates a 'strong presumption in favor of disclosure.'" *A.C.L.U. v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (*quoting Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)). "[A]gencies may withhold only those documents or portions thereof that fall under one of nine delineated statutory exemptions." *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 845 (D.C. Cir. 2010).

The agency "bears the burden of showing that withheld material falls within the asserted exemption." *Id.* (citing 5 U.S.C. § 552(a)(4)(B)). The agency must also show "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

In 2016, Congress added the "foreseeable harm" requirement, mandating that agencies may only withhold information under a FOIA exemption if the agency "reasonably foresees that disclosure would harm an interest protected by an exemption" or if "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i); *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 357–58 (D.C. Cir. 2021).

**B. Summary Judgment**

A court may grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). FOIA cases are usually decided on summary judgment motions. *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). When the party seeking disclosure challenges an agency's withholding or redaction of records, "the agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested . . . is wholly exempt from [the FOIA's] disclosure requirements." *Shapiro v. U.S. Dep't of Just.*, 34 F. Supp. 3d 89, 94 (D.D.C. 2014) (citing *Moayedi v. U.S. Customs & Border Prot.*, 510 F. Supp. 2d 73, 78 (D.D.C. 2007)).

An agency meets this burden if any combination of its Vaughn index, affidavits, or declarations "describe[s] the justifications for nondisclosure with reasonably specific detail, demonstrate[s] that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).

"A Vaughn index in combination with agency declarations is the typical way agencies provide courts with the information required." *Comptel v. Fed. Comms. Comm'n*, 910 F. Supp. 2d

100, 111 (D.D.C. 2012). An agency's justifications will be upheld if they are "logical" or "plausible." *Wolf v. Cent. Intel. Agency*, 473 F.3d 370, 375 (D.C. Cir. 2007) (citations omitted). The court also "must make specific findings" as to whether any "reasonably segregable portion of a record" is non-exempt and releasable "[b]efore approving the application of a FOIA exemption." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (citing 5 U.S.C. § 552(b)).

## III. ANALYSIS

### A. Adequacy of Search

To determine whether a search was adequate, the Court considers whether "the materials submitted by the agency satisfactorily demonstrate the apparent adequacy of the search conducted." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). An agency demonstrates adequacy by showing "that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (internal quotation marks omitted).

In addition to that legal guidance, "the Court's first decision denying Defendants summary judgment made very clear what was necessary for them to prevail on the adequacy issue." *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 21 F. Supp. 3d 60, 71 (D.D.C. 2014). The Court directed ICE to "[f]ile a declaration confirming that the agency had searched communications of Edith Lederman and Lana Khoury and must identify them by name." *Transgender L. Ctr.*, 775 F. Supp. 3d at 145–46.[1]

[1] Parties do not dispute that ICE has adequately performed searches using the term "intersex." *See* Pls.' Mot. at 5; *Transgender Law Ctr.*, 775 F. Supp. 3d at 149.

ICE has not done so. Though ICE claims that "Capt. Edith Lederman conducted a search of IHSC SharePoint clinical guidelines," Clark Decl. ¶ 6(b), there is no indication that ICE searched Captain Lederman's communications as the Order required, *Transgender L. Ctr.*, 775 F. Supp. 3d at 145–46. That is not the only glaring deficiency. ICE has not confirmed that it has searched Lana Khoury's communications either, *see* ICE Mot., despite the clear directive to both search her communications and identify her by name, *Transgender L. Ctr.*, 775 F. Supp. 3d at 145–46.

Plaintiff pointed out these deficiencies in their Motion, Pls.' Mot. at 7, but, startlingly, ICE does not meaningfully engage with them in its reply, *see* Reply to Opposition to Motion for Summary Judgment ("ICE Reply"), ECF No. 76. Instead, ICE argues that "the agency has maintained its longstanding practice of protecting the privacy interests of . . . ICE personnel who are not public-facing or otherwise widely known." *Id.* at 1–2. But the Court has already ruled on that issue, writing "ICE's privacy-protecting justification is unavailing in this context . . . ." *Transgender L. Ctr.*, 775 F. Supp. 3d at 145. And, even if ICE had a colorable argument about privacy, the Clark declaration does not address the searches of communications that the Court ordered at all. *See* Clark Decl. ¶ 6. ICE's statement that "Plaintiffs have not explained why identification by position is insufficient for the Court to assess the adequacy of ICE's search" is therefore perplexing. ICE Reply at 2.

Accordingly, the Court will deny ICE's motion for summary judgment on this point. *See Am. Immigr. Council*, 12 F. Supp. 3d at 73. ICE is not relieved of its obligation to comply with this unambiguous directive of the Court. *See Transgender L. Ctr.*, 775 F. Supp. 3d at 146.

### B. Exemptions Applied by ICE

ICE invoked Exemptions 5, 6, and 7 to withhold a broad swath of documents. As discussed above, ICE "bears the burden of showing that withheld material falls within the asserted exemption," *Elliott*, 596 F.3d at 845, and of demonstrating that disclosure would "harm an interest protected by an exemption,'" *Transgender L. Ctr.*, 775 F. Supp. 3d at 142–43 (quoting 5 U.S.C. § 552(a)(8)(A)(i)). The Court first elaborates upon the foreseeable harm requirement before addressing the specifics of each Exemption.

"[T]he foreseeable-harm requirement 'impose[s] an independent and meaningful burden on agencies.'" *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019) (quoting *Nat. Res. Def. Council v. U.S. Envt'l Prot. Agency*, No. 17-cv-5928, 2019 WL 3338266, at *1 (S.D.N.Y. July 25, 2019)). And the agency bears the burden of "proving that it has not 'improperly' withheld the requested records," *id.* (quoting *Citizens for Responsibility & Ethics in Washi. v. U.S. Dep't of Just.*, 922 F.3d 480, 487 (D.C. Cir. 2019)), which "does not shift even when the requester files a cross motion for summary judgment," *id.*

General, boiler-plate language is insufficient to carry that burden. *See id.* at 106–07. ICE already knows that because the Court made it clear in its previous ruling. *See Transgender L. Ctr.*, 775 F. Supp. 3d at 151 ("[A]s with all other withholdings, ICE must describe with reasonable particularity the 'foreseeable harm' that would result from disclosure." (citing 5 U.S.C. § 552(a)(8)(A)(i))).

The Court addresses the details of each exemption in turn.

**1. Exemption 5**

Exemption 5 applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Put another way, "Exemption 5 permits an agency to withhold internal documents that would be privileged or otherwise undiscoverable in civil litigation." *Stonehill v. Internal Revenue Serv.*, 534 F. Supp. 2d 1, 4 (D.D.C. 2008). ICE asserted this exemption with reference to the attorney-client privilege and the deliberative-process privilege. ICE Mot. at 10–18.

i. Attorney-Client Privilege

The Court has ruled that all invocations of the attorney-client privilege are waived except for documents "2021-ICLI-00061-2310, 2376, 5901, and 5902." *Transgender L. Ctr.*, 775 F. Supp. 3d at 152. The Court directed ICE to "provide additional detail regarding the steps it took to reasonably ensure that the information contained within the documents remained confidential at all times," *id.* at 151, "or else produce any material withheld or redacted pursuant to attorney-client privilege that is not protected by some other privilege," *id.* ICE was also directed describe the foreseeable harm that would result from disclosure. *Id.*

At this stage, ICE has asserted the attorney-client privilege only for documents 5901–5902. *See Vaughn* at 28–30. To successfully invoke attorney-client privilege, ICE must demonstrate "confidentiality both at the time of the communication and maintained since." *Nat'l Press Club Journalism Inst. v. Immigr. & Customs Enf't*, No. 18-cv-2932, 2023 WL 9001337, at *12 (D.D.C. Dec. 28, 2023) (quoting *Costal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980)). ICE bears the burden of demonstrating that withheld information is protected by the

privilege through "detailed and specific information." *Campbell v. U.S. Dep't of Just*, 164 F.3d 20, 30 (D.C. Cir. 1998).

In its *Vaughn* index, ICE asserts that the privilege applies because "edits and comments were made to draft language by the Office of the Principle Legal Advisor" and that "[t]he withheld information has been shared only with the client office employees because the matter being discussed in the emails was in their area of responsibility." *Vaughn* at 29–30. But that is basically the same justification that ICE relied upon the last time around. *See* Pineiro Decl., ECF No. 40 Ex. 2 ¶ 32 ("The withheld information has been shared only with the client office employees because the matter being discussed in the emails was in their area of responsibility."); *see also* ICE Reply at 5-6 (making the same conclusory statement).

ICE's updated justification therefore remains inadequate because of its failure to "provide additional detail regarding the steps it took to reasonably ensure that the information contained within the documents remained confidential at all times." *Nat'l Press Club*, 2023 WL 9001337, at *13; *see also Transgender L. Ctr.*, 775 F. Supp. 3d at 152 (rejecting the same formulation).[2]

ICE's description of foreseeable harm is also inadequate. The agency claims that disclosure "could result in a chilling effect on interactions and communications between agency employees and their legal counsel." ICE *Vaughn* at 30, 79. But that kind of justification would only be persuasive if ICE had demonstrated that the attorney-client privilege applied in the first place. *See Am. First Legal Found. v. U.S. Dep't of Just.*, 805 F. Supp. 3d 187, 214 (D.D.C. 2025) ("While

[2] ICE also asserts the attorney-client privilege for page 6508. ICE *Vaughn* at 78. But the Court has already held that "all invocations of the attorney-client privilege are waived" except for certain enumerated documents. *Transgender L. Ctr.*, 775 F. Supp. 3d at 152. Page 6508 is not one of those documents. It is also apparently not new because ICE asserted that pages discovered after the Court's last opinion were either non-responsive, duplicative, or released in full. Def.'s Statement of Material Facts ¶ 36. Accordingly, the privilege is waived for this page as well.

FOIA requires agencies to articulate a 'non-generalized explanation of the foreseeable harm that would result from disclosure' of privileged material, demonstrating that the attorney-client privilege applies 'will go a long way' toward fulfilling that requirement." (quoting *Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, 567 F. Supp. 3d 97, 124 (D.D.C. 2021))). ICE has not done so.

Because ICE has not met its burden of demonstrating that Exemption 5 applies to the documents for which it has asserted the attorney-client privilege, the Court will deny ICE's motion for summary judgment as to documents protected under the attorney-client privilege and grants Plaintiffs' cross-motion on withholdings made pursuant to the attorney-client privilege.

ii. Deliberative-Process Privilege

Exemption 5 includes the deliberative-process privilege, which allows agencies to withhold communications that are "both [1] predecisional and [2] deliberative." *Reps. Comm.*, 3 F.4th at 362. "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021).

The D.C. Circuit has provided guidance on the necessary information to invoke the deliberative-process privilege:

> [T]he "who," i.e., the roles of the document drafters and recipients and their places in the chain of command; the "what," i.e., the nature of the withheld content; the "where," i.e., the stage within the broader deliberative process in which the withheld material operates; and the "how," i.e., the way in which the withheld material facilitated agency deliberation.

*Jud. Watch, Inc. v. U.S. Dep't of Just.*, 20 F.4th 49, 56 (D.C. Cir. 2021).

Crucially, as addressed above and in the Court's previous opinion, ICE also bears the burden of "describ[ing] with reasonable particularity the 'foreseeable harm' that would result from disclosure." *See Transgender L. Ctr.*, 775 F. Supp. 3d at 151 (citing 5 U.S.C. § 552(a)(8)(A)(i))). The Court therefore ordered Defendants to File a *Vaughn* index "including the necessary foundation to withhold each individual document under the deliberative-process privilege, or else disclose those documents in full." *Id.* at 154.

ICE asserts the deliberative process privilege for a variety of categories of documents, primarily emails and memoranda. Clark Decl. ¶¶ 14–15. Plaintiffs challenge ICE's assertion of the privilege for each. First, Plaintiffs argue that ICE's *Vaughn* index "lacks any information regarding the 'where' and the 'how,' *i.e.*, at what stage within the deliberative process the emails appear and the way the emails facilitated ICE's deliberations." Pls.' Mot. at 9. Second, Plaintiffs generally contest ICE's description of draft memoranda because they are either too vague or fail to "describe where each draft fits within the deliberative process or how the draft facilitated ICE's deliberations." *Id.* at 10. Finally, Plaintiffs' argue that ICE's description of foreseeable harm is inadequate. Pls.' Mot. at 11–13. Because the issue is conclusive, the Court begins by addressing the foreseeable harm requirement.

1) Foreseeable Harm

ICE's description of foreseeable harm is legally insufficient. "[T]he foreseeable-harm requirement 'impose[s] an independent and meaningful burden on agencies.'" *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106 (quoting *NDRC*, 2019 WL 3338266, at *1). General, boiler plate language is insufficient to carry that burden. *See id.* at 106–107.

Here, ICE's *Vaughn* index asserts a single statement regarding foreseeable harm across the board, with minor variations:

> Release of the draft material would serve to profoundly chill the decision-making process across ICE because it would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel, and also ensure personnel would be less inclined to produce and circulate materials for the consideration and comment of their peers.

ICE *Vaughn* at 9, 14, 16, 35, 36, 42, 46, 48, 50, 52, 57, 77, 92. In certain entries, ICE varies the language slightly, adding that "disclosure would . . . ensure personnel would be less inclined to freely memorialize their thoughts regarding litigation strategies and enforcement actions, which would adversely affect the ability to ICE to effectively conduct government business." *Id.* at 17, 20, 25, 27, 29, 38, 40, 53, 79, 90.

Those general assertions are not sufficient to carry the agency's burden. *See Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 107 (rejecting the justification that "particular records could 'chill open and frank discussions among CBP employees'"); *see also Am. Oversight v. Dep't of Homeland Sec.* 691 F. Supp. 3d 109, 117 (D.D.C. 2023) ("ICE never tethers its concerns to these particular documents. To do that, it would need to explain how disclosing the documents 'at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward.'" (quoting *Reps. Comm.*, 3 F.4th at 370)).

ICE should know better. Courts have repeatedly admonished this kind of response from the agency. *See Doe v. U.S. Immigr. & Customs Enf't*, No. 24-617, 2025 WL 2779793, at *4 (D.D.C. Sept. 30, 2025) (rejecting functionally-equivalent language and noting that multiple courts have done the same). As if that were not enough, this Court already ruled in this very case that "a blanket statement of foreseeable harm—essentially restating the rationale for the deliberative-

process exemption in the first place—is insufficient to invoke the deliberative process privilege." *Transgender L. Ctr.*, 775 F. Supp. at 154.

And errors in ICE's *Vaughn* Index suggest that the same description of foreseeable harm has simply been copied and pasted for each document. For example, the first few entries containing the description state: "Release of this material would serve to profoundly chill the decision-making process across ICE, where it is crucial that employees are able to freely express their opinion regarding how best to treat detainees." ICE *Vaughn* at 17, 20, 25, 27, 29, 38, 40, 53. Then, it appears that someone made a copy and paste mistake. One entry reads: "Release of this material would serve to profoundly chill the decision making process across ICE, where it is crucial that employees are able to freely express their opinion regarding how best to treat." *Id.* at 55. Then the error recurs, raising the question of whether ICE seriously considered whether the documents in question qualified for Exemption 5. *Id.* at 76. In any event, this "repeated explanation, which appears to have just been copied and pasted verbatim throughout the *Vaughn* Index, is insufficient . . . ." *Hardy v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 243 F. Supp. 3d 155, 166 n.8 (D.D.C. 2017). ICE's failure on this point alone is sufficient to conclude the matter.

2) Deliberative Process Description

And even if more analysis were required, ICE's *Vaughn* index often fails to provide sufficient information to determine whether the deliberative-process privilege applies. For a number of documents,[3] ICE asserts: "In this email exchange, senior ERO Officers provide a series of proposals and recommendations that were derived from the Transgender Working Group for the

[3] Pages 16–18, 95–97, and 98–99. ICE *Vaughn* at 24.

ICE Acting Director's consideration." ICE *Vaughn* at 24. But that is not the level of specificity that the D.C. Circuit requires. For example, it does not explain "the way in which the withheld material facilitated agency deliberation." *Jud. Watch*, 20 F.4th at 56. In fact, the entry does not specify even a general subject matter of "proposals and recommendations" that the emails contain. ICE's description is similar to that addressed in *Public Employees for Environmental Responsibility v. EPA*. 213 F. Supp. 3d 1. There, the EPA's *Vaughn* index indicated that a document "reflects analysis, recommendations, and opinions that were considered as part of the Agency's decision making process." *Id.* at 15. The court held in that case that "[a] general statement of this sort is not sufficient to carry the agency's burden to explain the function and significance of a document in the agency's decisionmaking process." *Id.*

Consider another description that ICE provided: "In this email exchange, senior ERO Officers provide a series of recommendations and draft language pertaining to the use of prosecutorial discretion of transgender detainees for the ICE Acting Director's consideration." *Vaughn* at 27. On face, this entry is vague. Transgender detainees do not have prosecutorial discretion. The phrase "prosecutorial discretion of transgender detainees" is therefore unclear. Even if the Court chalks it up to an error, that would undermine the Court's confidence in ICE's diligence in evaluating withheld information because "FOIA litigants are entitled to assume that the agency's *Vaughn* index is accurate in every detail. And so is the court. There is no excuse for submitting a *Vaughn* index that contains errors, even minor ones. We expect agencies to ensure that their submissions in FOIA cases are absolutely accurate." *Schiller v. Nat'l Lab. Rels. Bd.*, 964 F.2d 1205, 1209 (D.C. Cir. 1992) (abrogated on other grounds). Even without this error, the entry is insufficient because it does not address the "stage within the broader deliberative process in

which the withheld material operates," or "the way in which the withheld material facilitated agency deliberation." *Jud. Watch*, 20 F.4th at 56.

Another entry reads: "the information redacted consists of draft language and comments to the Transgender Care Memo. These comments and edits to paragraphs within the memo have been emailed by ERO employees to senior ERO Officers." ICE *Vaughn* at 34. Though this entry seems to gesture at an identifiable deliberative process, it once again does not clarify "the stage within the broader deliberative process in which the withheld material operates." *Judicial Watch*, 20 F.4th at 56. It also fails to explain how "the withheld material facilitated agency deliberation." *Alford v. Collins*, No. 22-2856, 2026 WL 2168882, at *7 (D.D.C. July 28, 2026) (quoting *Campaign L. Ctr. v. U.S. Dep't of Just.*, 34 F.4th 14, 23 (D.C. Cir. 2022) (internal quotation marks omitted)). Did the comments intend to conform the memorandum to the law? To other policies? Again, the Court has no idea.

A final example gets closer. ICE writes: "In this email exchange, IHSC employees are making suggestions, recommendations, and providing their opinions and analysis to their superior regarding how to diagnosis transgender detainees and how to encompass that into an ICE Directive." ICE *Vaughn* at 17. But what kind of recommendations are these? Medical? Legal? Again, this description is too "general . . . to carry the agency's burden to explain the function and significance of a document in the agency's decisionmaking process." *Pub. Emps.*, 213 F. Supp. 3d at 15.

3) Conclusion

In sum, ICE was on notice that their description of foreseeable harm was inadequate. *Transgender L. Ctr.*, 775 F. Supp. 3d at 154. And the Court gave ICE the opportunity to adequately

support its withholdings under Exemption 5, specifically requiring ICE to provide "the necessary foundation . . , or else disclose the documents in full. *Id.* Instead, ICE has parroted the same generic assertions that the Court has already rejected while claiming that it "provided tailored, context-specific explanations of foreseeable harm." ICE Reply at 4. That representation is absurd at best and dishonest at worst. The Court will not allow ICE to simply string out this litigation which has been pending for over five years. *See* Complaint, ECF No. 1 (Aug. 12, 2021).

With those considerations in mind, the Court "declines to give [ICE] another bite at the apple." *Leopold v. Fed. Hous. Fin. Agency*, No. 23-1935, 2026 WL 2676063, at *13 (D.D.C. Sept. 11, 2026) (refusing to give FHFA another chance after "parrot[ing] the same conclusory explanation for the reasonably foreseeable harm that would result from disclosing the documents in question" after litigation had gone on for three years); *cf. Ams. for Fair Treatment v. U.S. Postal Serv.*, 663 F. Supp. 3d 39, 62 (D.D.C. 2023) (Lamberth, J.) (allowing USPS another chance because there were no "signs of dilatory behavior" and the case had been pending for less than a year (quoting *S. All. for Clean Energy v. U.S. Dep't of Energy*, 853 F. Supp. 2d 60, 79 (D.D.C. 2012))).

Accordingly, "Plaintiffs are entitled to summary judgment as to the documents withheld solely under Exemption 5." *Leopold*, 2026 WL 2676063, at *13. ICE must remove redactions made pursuant to Exemption 5.

**2. Exemption 7**

ICE has asserted 7(C) to redact the names of employees and third-parties and 7(E) to redact technical information associated with ICE databases. As a practical matter, ICE has asserted 7(C) in conjunction with Exemption 6, as is common. *See Voinche v. Fed. Bureau of Investigation*, 412 F. Supp. 2d 60, 68 (D.D.C. 2006) (Lamberth, J.) ("FOIA Exemption 7(C) overlaps with Exemption

6 in that it also protects against unwarranted intrusions of personal privacy, but Exemption 7(C) is limited to information compiled for law enforcement purposes . . . .").

ICE has asserted Exemptions 7(C) and Exemption 6 to redact detainee information and information that identifies third parties. ICE has redacted the "names and A-numbers of aliens" as well as other personally identifying information in certain files. ICE *Vaughn* at 19; *see also id.* at 21, 22, 24, 31, 32, 34, 44, 52-53, 71, 73, 81, 83, 86, 88. Those redactions have merit. "It is well-established that individuals have a privacy interest in not being publicly associated with law enforcement efforts, even where they are the targets of those efforts." *Am. First Legal Found*, 759 F. Supp. 3d at 62 (citing *Comput. Pros. for Soc. Resp. v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996)). Plaintiffs do not dispute those redactions. ICE Mot. at 4 (stating that Plaintiffs have agreed not to challenge Exemptions 6 and 7(C) as they relate to detainee information). Accordingly, ICE's redaction of detainee information is proper.

As for redactions to ICE employee names under Exemption 7(C), the Court will grant ICE's motion to redact employee names under Exemption 6, *see infra* section III.3.i, meaning that any application of Exemption 7(C) to ICE employees is superfluous. Accordingly, the analysis below applies to redactions of the names of non-detainee third parties and database information under Exemption 7.

Exemption 7 applies to "records or information compiled for law enforcement purposes" to the extent that disclosure would cause a harm enumerated in Exemption 7's subsections. 5 U.S.C. § 552(b)(7). To determine whether the exemption applies, the Court must "focus [] on how and under what circumstances the requested files were compiled, and whether the files sought relate[] to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. U.S. Dep't of Just.*, 284 F.3d 172, 176–77 (D.C. Cir. 2002) (citations and internal quotations

omitted). "If the records at issue do not involve an ongoing law enforcement investigation, 'materials may still meet the threshold . . . if they are akin to guidelines, techniques, and procedures for law enforcement investigations and prosecutions outside of the context of a specific investigation." *Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 31 (D.D.C. 2018) (quoting *Pinson v. U.S. Dep't of Just.*, 236 F. Supp. 3d 338, 365 (D.D.C. 2017)) (internal quotation marks omitted).

i. 7(C)

In its previous ruling, the Court ordered ICE to include in its *Vaughn* index information "giving the Court a clearer picture of whether the records satisfy the law enforcement purposes threshold." *Transgender L. Ctr.*, 775 F. Supp. at 156. Unfortunately, the agency has done little to clear this up.

The Clark Declaration simply restates the exact justification that the Court has already rejected. *See* Clark Decl. ¶ 20 ("The records and information at issue in this matter pertain to ICE's obligation to enforce the immigration laws of the United States by investigating non-U.S. individuals who may be present in the United States illegally, including records of interviews, arrests, bookings, detentions, removals, and other related investigations."); *Transgender L. Ctr.*, 775 F. Supp. at 155 (holding that the exact same language did not meet the threshold and noting that another court had already rejected the sufficiency of that language).

ICE's *Vaughn* index is no better. For example, the first entry describes "[e]mail communication sent throughout ERO alerting ERO that ICE developed a Transgender Care Quick Reference Guide." ICE *Vaughn* at 1. ICE then asserts 7(C) and 7(E). *Id.* at 1–2. But that tells the Court nothing about "whether the files sought relate[] to anything that can fairly be characterized

as an enforcement proceeding." *Jefferson*, 284 F.3d at 176–77. Nor can the Court determine whether these are "guidelines, techniques, and procedures for law enforcement investigations and prosecutions." *Roseberry-Andrews*, 299 F. Supp. 3d at 31.

Another entry describes "[a]n email exchange between senior ERO officers and the ICE Acting Director regarding an overview of ERO's efforts pertaining the detention of transgender detainees." ICE *Vaughn* at 26. The entry does not gesture toward an enforcement proceeding, *see Jefferson*, 284 F.3d at 176–77, or toward any procedures for investigations, *see Roseberry-Andrews*, 299 F. Supp. 3d at 31. What kind of "efforts" is this entry talking about? The Court cannot tell.

There are more puzzling examples as well. For example, ICE asserts Exemption 7 for "[e]mails between ERO employees regarding how ICE should diagnose transgender and dysphoria in detainees." ICE *Vaughn* at 16. There is no clear nexus between such a withholding and ICE's "law enforcement duties" or any "individual or incident and a possible . . . violation of federal law." *Am. First Legal Found. v. U.S. Dep't of Homeland Sec.*, 759 F. Supp. 3d 49, 59 (D.D.C. 2024) (quoting *Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 40 (D.C. Cir. 2011)). In other words, it is just not clear how "diagnosis" relates to ICE's law-enforcement duties.

Other examples are even more perplexing. ICE asserts Exemption 7 for a "[d]ocument from Human Rights to Director of ICE," ICE *Vaughn* at 12, and "[a] letter sent from the Human Rights Campaign," *id.* at 39. ICE did not even prepare these documents. Again, the claim that a document from a human rights agency, which does not have any apparent law enforcement purpose or capability, was created for law enforcement purposes falls far below the threshold that Exemption 7 requires.

Accordingly, ICE has once again failed to meet the law enforcement purposes threshold to invoke Exemption 7. The Court sees no reason to give the agency another shot here. ICE must remove any redactions justified solely by Exemption 7(C).

ii. 7(E)

ICE has only asserted exemption 7(E) for redactions to technical database information. *See* ICE *Vaughn* at 2, 7, 11, 24, 42, 44, 70, 84, 86. Plaintiffs do not specifically take issue with withholdings of technical information under 7(E), instead dedicating their briefing to addressing whether ICE had met the threshold requirements. Pls.' Mot. at 15–16.

Database information generally qualifies as compiled for law enforcement purposes, *see Long v. U.S. Immigr. & Customs Enf't*, 464 F. Supp. 3d 39, 49 (D.D.C. 2015), so "courts . . . generally have affirmed the withholding of information related to databases—metadata, codes, and structures—under Exemption 7(E) for risk of cyber-attack or data breach," *Shapiro v. U.S. Dep't of Just.*, 393 F. Supp. 3d 111, 122 (D.D.C. 2019); *see also Neuman v. U.S.*, 70 F. Supp. 3d 416, 426 (D.D.C. 2014).

Still, ICE's descriptions of this information are not fully satisfactory. For example, entries that describe redactions of "information that describes how various law enforcement databases are linked," ICE *Vaughn* at 24, or "database query search code information," *id.* at 86, do not give the Court sufficient information to assess whether such information "could be released without creating an unacceptable threat to the security of the" database, *Long v. U.S. Immigr. & Customs Enf't*, 464 F. Supp. 3d 409, 424 (D.D.C. 2020). The Court will therefore direct ICE to provide supplemental declarations addressing "the distinctions, if any, between information requested here

and that disclosed in *Long*." *Buzzfeed, Inc. v. U.S. Dep't of Homeland Sec.*, 610 F. Supp. 3d 139, 149 (D.D.C. 2022).

Accordingly, ICE's motion for summary judgment as to withholdings pursuant to Exemption 7 will be denied and ICE will be directed to provide supplemental declarations addressing the law enforcement threshold for third party names redacted under Exemption 7(C) and the nature of database information withheld pursuant to 7(E).

### 3. Exemption 6

ICE has invoked Exemption 6 to redact the names of ICE employees and third parties. Clark Decl. ¶ 24. The Court concludes that ICE has successfully asserted Exemption 6 for employee identities but has provided insufficient information for the Court to grant summary judgment on redactions of third-party identities.[4] As detailed above, detainee information is not at issue.

Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Similar files" include "detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 1497).

Once an agency raises a privacy interest that is not *de minimis*, *see Gilman v. Dep't of Homeland Sec.*, 32 F. Supp. 3d 1, 10 (D.D.C. 2014), the Court will determine whether a release of the information is warranted by "balanc[ing] the public interest in disclosure against the interest

---

[4] In its previous opinion, the Court ruled that ICE had improperly withheld domain names. *Transgender L. Ctr.*, 775 F. Supp. 3d at 157. ICE appears to have unredacted those domain names. *See* Clark Decl. ¶ 8. Plaintiffs do not appear to dispute this point.

Congress intended the Exemption to protect," *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 776 (1989). When considering the public interests, the Court only considers "the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *U.S. Dep't of Def. v. Fed. Lab. Rel. Auth.*, 510 U.S. 487, 497 (1994) (quoting *Reps. Comm. for Freedom of the Press*, 489 U.S. at 773).

ICE was also directed to include in its *Vaughn* index information allowing the Court to determine whether the invocation of Exemption 6 for non-public facing ICE employees and third parties is appropriate. *Transgender L. Ctr.*, 775 F. Supp. 3d at 159. For third parties, ICE was directed to "'provide additional information in the form of supplemental declarations or affidavits' as to the named person's privacy interests in having their names withheld." *Id.* at 159 (quoting *Laws.' Comm. for. Civ. Rts. Under L.*, No. 18-cv-167, 2020 WL 7319365, at *34 (D.D.C. Oct. 16, 2020)). The Court addresses each category in turn.

i. ICE Employees

ICE has provided some additional information supporting the privacy interest of low-level ICE employees. A typical entry in its *Vaughn* index discusses the application of Exemption 6 as follows:

> [C]onceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives; could place them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge. ICE has been designated as a Security/Sensitive Agency under the U.S. Office of Personnel Management's official Data Release Policy, recognizing that ICE employees are subject to heightened risk of harassment or attack by virtue of their employment with ICE.

ICE *Vaughn* at 2. For this category of information, ICE has carried its burden of establishing Exemption 6.

True, ICE's submissions leave something to be desired. For example, the Clark Declaration is unhelpful. It is mostly a copy and paste job from the Pineiro declaration from last time around. *See* Clark Decl. ¶¶ 21–28; Pineiro Decl. ¶¶ 36–44. The Clark Declaration states at one point: "in other cases, more extensive redactions were necessary, as explained in paragraph 42." ¶ 28. A few simple flips of the page reveal, however, that the Clark Declaration ends at paragraph 37. ¶ 37. A simple typographical error? No. Just a copy from paragraph 44 of the Piniero Declaration. ¶ 44.

Still, the Court agrees that ICE has asserted a privacy interest in employee identities and that disclosure of those identities would not serve the public interest relevant to the FOIA. "The privacy interest of civilian federal employees includes the right to control information related to themselves and to avoid disclosures that 'could conceivably subject them to annoyance or harassment in either their official or private lives.'" *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 116 (D.D.C. 2005) (quoting *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980)). Here, ICE has asserted that their designation as a "security/sensitive" agency shows a recognition that "ICE employees are subject to a heightened risk of harassment or attack." ICE *Vaughn* at 2. ICE's declaration, though general, asserts a privacy interest that is not *de minimis*, a standard which "is not very demanding." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1230 (D.C. Cir. 2008).

For their part, Plaintiffs have provided no substantive justification for why employee names would serve the relevant public interest for the purposes of Exemption 6. *See* Pls.' Mot. at 16–19. Plaintiffs' argument therefore fails because "[i]t is the requester's obligation to identify a public

interest to weigh against the employees' privacy interest, and plaintiff fails to meet this obligation." *Landis v. Fed. Bureau of Prisons*, No. 21-0504, 2026 WL 84293, at *4 (D.D.C. Jan. 12, 2026). And courts in this circuit have held that the disclosure of "employees' identities would in no way 'she[d] light on the agency's performance of its statutory duties' or otherwise let citizens know what their government is up to." *Alford v. Collins*, No. 22-2856, 2025 WL 3140556, at *9 (D.D.C. Nov. 10, 2025) (quoting *FLRA*, 510 U.S. at 497).

Even if Plaintiffs had demonstrated a relevant public interest, ICE has established that foreseeable harm would result from disclosure. ICE's designation as a security/sensitive agency is relevant. *See Landis*, 2026 WL 84293, at *4. In *Landis v. Federal Bureau of Prisons*, Defendants made a similar assertion of employee privacy interests, stating that release of identifying information "could subject those BOP employees and their families to being searched on the internet or otherwise located . . . ." *Id.* at *4. And, like ICE, BOP has been designated as a security/sensitive agency by OPM. *Id.* The *Landis* court held that Defendant had demonstrated foreseeable harm based on general concerns about harassment, *id.*, and the Court similarly concludes that disclosing the names of ICE employees may be "of a type that might invite unwanted intrusions," *id.* (citing *Nikanen Ctr. v. Fed. Energy Regul. Comm'n*, 20 F.4th 787, 791 (D.D.C. 2021)).

Accordingly, the Court will grant ICE's motion with respect to employee names redacted under Exemption 6 and deny Plaintiffs' cross-motion.

ii. Third Parties

ICE has also provided additional information that justifies withholding certain third-party information. As noted above, the Court agrees with parties that ICE has properly asserted

Exemption 6 as it applies to detainee information but cannot determine whether they have done so with respect to third party information.

But ICE has not addressed redactions of the names of non-detainee third parties. For example, ICE invoked Exemption 6 to redact the name of a third party on an email about "scheduling meetings." ICE *Vaughn* at 6. Elsewhere, ICE redacts the name of a third party in an entry titled: "Document from Human Rights to Director of ICE." *Id.* at 12. Without more information about these third parties or analysis of how their privacy interest could be harmed, the Court cannot perform the balancing that Exemption 6 requires. *See Reps. Comm. for Freedom of Press*, 489 U.S. at 776.

Though ICE has not provided additional information as requested, the "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name . . . is significant." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989). Accordingly, ICE will be directed to provide the level of detail necessary for the Court to evaluate the privacy interests of third-party identities redacted pursuant to Exemption 6.

**C. Segregability**

In its last opinion in this case, the Court deferred ruling on segregability until ICE had addressed "the adequacy of its search and the propriety of ICE's withholdings under claimed Exemptions." *Transgender L. Ctr.*, 775 F. Supp. 3d at 161. Though the Court has now resolved some of the issues relating to Exemptions, ICE has still not demonstrated that it performed an adequate search. Accordingly, the Court will again defer ruling on segregability. *See id.*

### D. In Camera Review

As discussed above, the Court is not satisfied with ICE's responsiveness to Plaintiffs' request or in its descriptions of withheld documents. Accordingly, the Court will order ICE to produce certain documents[5] for *in camera* review to assess whether ICE's redactions have been properly asserted. *See Am. C.L. Union v. U.S. Dep't of Def.*, 628 F.3d 612, 626 (D.C. Cir. 2011) ("Congress intended to impose no mandates upon the trial court, but instead leave the decision of whether to conduct *in camera* inspection to the broad discretion of the trial judge." (quoting *Ctr. for Auto Safety v. Env't Prot. Agency*, 731 F.2d 16, 20 (D.C. Cir. 1984)).

## IV. CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part ICE's Motion for Summary Judgment and will grant in part and deny in part Plaintiffs' Motion for Summary Judgment.

With respect to the adequacy of searches performed, ICE's motion will be denied without prejudice. ICE will be ordered to comply with this Court's instructions with respect to searches of communications detailed above.

With respect to ICE's assertion of Exemption 5, ICE's motion will be denied and Plaintiffs' motion will be granted. ICE must remove redactions made pursuant to Exemption 5.

With respect to ICE's assertion of Exemption 7(C) for non-detainee third parties, ICE's motion will be denied, and Plaintiff's motion will be granted. For redactions made to database information pursuant to 7(E), ICE's motion will be denied, and Plaintiffs' motion will be denied

[5] Pages 173, 192, 196–98 331–32, 549–51, 199–201, 722–66. 2157–2161. These documents should be produced unredacted but also provide the Court with context about which portions were redacted.

without prejudice. ICE will be directed to provide supplemental declarations to justify its redactions pursuant to Exemption 7 consistent with the discussion above.

With respect to ICE's assertion of Exemptions 6 and 7(C) for detainee information, ICE's motion will be granted.

With respect to ICE's assertion of Exemption 6 for ICE employees and non-detainee third parties, ICE's motion will be granted in part and denied in part. Plaintiffs' motion will be denied without prejudice. Specifically, the Court will grant ICE's motion as it relates to the redaction of employee identities. Plaintiffs' motion will be correspondingly denied. ICE's motion will be denied with respect to non-detainee third-party identities and Plaintiffs' motion will be denied as well. ICE will be directed to provide information with sufficient detail to justify those redactions.

An Order consistent with this Memorandum Opinion shall issue.

Date: 24 September, 2026

Royce C. Lamberth
Hon. Royce C. Lamberth
United States District Judge